**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JOHN D. LIPANI, M.D.,** *as an assignee authorized representative, and attorney-in-fact of his patient A.T.*,

Plaintiff,

v.

**AETNA LIFE INSURANCE COMPANY,**

Defendant.

Civil Action No. 22-2634 (ZNQ) (DEA)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss the Complaint ("the Motion") by Defendant Aetna Life Insurance Company ("Aetna") pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 11.) Defendant filed a Memorandum of Law in Support of the Motion ("Moving Br.", ECF No. 16), along with a Certification of Elizabeth C. Petrozelli ("Petrozelli Cert.", ECF No. 11-2). Plaintiff John Lipani, M.D., as an assignee authorized representative, and attorney in fact of his patient A.T. ("Plaintiff" or "Dr. Lipani") opposed the motion ("Opp'n Br.", ECF No. 14), and Defendant filed a reply ("Reply Br.", ECF No. 17). Plaintiff also filed a sur-reply. ("Sur-Reply Br", ECF No. 18.) The Court has carefully considered the parties submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

1

I.  **BACKGROUND** [2]

    A.  **The Parties**

John D. Lipani M.D. ("Dr. Lipani") is a board-certified, fellowship-trained neurosurgery specialist in brain and spine surgery. (Compl. ¶ 1.) Dr. Lipani is the sole owner and operator of Princeton Neurological Surgery, P.C. ("PNS"). (*Id.*)

PNS is a New Jersey professional corporation that owns and operates a neurological surgery practice that specializes in brain tumor treatment, treatment of intracranial conditions, complex brain surgery, brain tumor surgery, complex spine surgery, and minimally invasive surgery. (*Id.* ¶ 2.)

Aetna is a health insurance company with its corporate headquarters and principal place of business in Connecticut. (*Id.* ¶ 3.) Aetna underwrites and/or administers certain commercial health plans through which healthcare expenses incurred by insureds for services and/or products covered by the plans are reimbursed by and/or through Aetna, subject to each plan's terms. (*Id.* ¶ 4.) Aetna is a fiduciary under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA"). (*Id.*)

At all times relevant, A.T. was a "beneficiary" as defined by 29 U.S.C. § 1002 (8) in an "Employee Health Benefit Plan," as defined by 29 U.S.C. § 1002 (1) administered by Aetna, through her employer, Conduent, Inc. (*Id.* ¶ 5.) A.T. received health benefits through Aetna Choice POS II (the "Plan"). (*Id.*)

    B.  **Factual Background**

A.T. assigned her right to bring this action to Dr. Lipani. (*Id.* ¶ 11.) The instrument A.T. executed in favor of Dr. Lipani incorporates the following language:

---

[2] For purposes of this motion, the Court will take all facts alleged in the Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitled to [PNS] and/or [Dr. Lipani] . . . I hereby authorize [PNS] and/or [Dr. Lipani] to submit claims, on my and/or my dependent's behalf, to the benefit plan.

(*Id.* ¶ 11.)

The assignment of benefits and claims also states, in relevant part:

> I hereby designate, authorize, and convey to [PNS] and/or [Dr. Lipani] to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan. . . the right and ability to act as my Authorized Representative in connection with any claim, right or cause in action said that I may have under such insurance policy insurance policy and/or benefit plan.

(*Id.* ¶ 12.)

A.T. has designated Dr. Lipani as her "authorized representative," as defined in 29 C.F.R. § 2560.503-1. (*Id.* ¶ 13.) The instrument A.T. executed in favor of Dr. Lipani incorporates the following language:

> I hereby designate, authorize, and convey to [PNS] and/or [Dr. Lipani] to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause in action that I may have under such insurance policy and/or benefit plan; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.5031(b)(4) with respect to any healthcare expense incurred as a result of the services I received from Provider and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines.

(*Id.*)

3

A.T. also designated Dr. Lipani as her "attorney-in-fact" for purposes of pursuing this claim. (*Id.* ¶ 14.) The instrument A.T. executed in favor of PNS incorporates the following language:

> I hereby designate, authorize, and convey to Provider to conduct insurance transactions and to demand, sue for, collect, recover and receive all goods, claims, debts, monies, and demands whatsoever now or shall hereafter become due, owning or belonging to me (including the right to institute any action, suit or legal proceedings, for the recovery of any claims or any part, or parts, thereof, to the possession whereof I may be entitled), to have and take all means for the recovery thereof, by action at law, suits in equity, or otherwise, and to compromise and agree for the same, and to make, execute and deliver receipts, releases, acquittances or other sufficient discharges therefore, and to sue and to settle suits of any kind in my name or on my behalf. This Power of Attorney extends to the power to conduct litigation and other legal proceedings, including the acceptance of service of process on my behalf, related to any insurance transactions. This Power of Attorney includes the power to conduct health care billing, recordkeeping and payment, which authorizes the Provider to act as my representative pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), sections 1171 through 1179 of the Social Security Act, 42 U.S.C. Section 1320d, and applicable regulations, in order to take action including but not limited to obtaining access to my health care information.
> Provider shall follow my instructions as set forth in this Assignment of Benefits. The Provider shall not be authorized to make any health care decisions on my behalf. Furthermore, I do not authorize the Provider to: (a) make gifts or gratuitous transfers, including but not limited to gifts or gratuitous transfers of my property to the Provider; or (b) designate, change or revoke the beneficiary designations in any life insurance, annuity, or similar contract, employee benefit or plan or retirement benefit or plan, payable on death or transfer on death account, or any other account or benefit; or (c) make, amend, alter, revoke or terminate any inter vivos trust, registration of my securities in beneficiary form, or any provisions for nonprobate transfer at death or to open, modify or terminate a transfer on death account; or (d) make transfers of property, money or other assets to any trust; or (e) disclaim property or disclaim a power of appointment or discretion held by me as executor or trustee or in a similar fiduciary capacity; or (f) open or close any account of mine including an account naming the Provider and I as joint owners unless the change in account status is solely ministerial in nature; or

>    (g) create or change rights of survivorship; or (h) renounce my designation as fiduciary for another person; or (i) reject, renounce, disclaim, release, or consent to a reduction in or modification of a share in or payment from an estate, trust or other beneficial interest; or (j) delegate to others any one, more or all of the powers that have been conferred on the Provider.

(*Id.*)

The Power of Attorney is duly witnessed and notarized. (*Id.* ¶ 15.)

### 1. A.T.'s Emergency Surgery

On February 11, 2021, A.T. arrived at the Capital Health Regional Medical Center emergency room with symptoms of debilitating pain. (*Id.* ¶ 16.)

An emergency room physician diagnosed numbness, weakness, and radiculopathy of the upper right extremity. (*Id.* ¶ 17.) Based on this diagnosis, A.T. was admitted for emergency surgery. (*Id.* ¶ 18.) Dr. Sando LaRocca (not a party to this suit) was the primary surgeon and Dr. Lipani was the assistant surgeon. (*Id.* ¶ 19.)

### 2. The Plan's Terms

The Plan and insurance card confirm that Aetna is the claims administrator. (*Id.* ¶ 32.) The Plan explains that the claims administrator may, "in its discretion, interpret and apply the terms of the Plan regarding benefit payment and to make findings of fact. This includes determining whether individuals are entitled to benefits under the Plan and calculating benefit payments." (*Id.* ¶ 33.)

Under the terms of the Plan, out of network ("ONET") emergency services will pay an amount equal to the greatest of the following (adjusted for in-network cost-sharing requirements):

>    • The amount negotiated with in-network providers for the emergency service furnished,
>    • The reasonable and customary amount for the emergency service furnished, and
>    • The amount that Medicare would pay for the emergency service, excluding any in-network copayment or coinsurance imposed.

The plan defines reasonable and customary as "[t]he usual charge of most providers of similar training and experience in the same or similar geographic area for the same or similar medical service or supplies." (*Id*. ¶ 35.) The Plan also acknowledges ERISA's characterization of an "Urgent Care Claim" as a claim which if the regular time periods for handling such a claim would seriously jeopardize . . . life or health . . . or ability to regain maximum function, or [w]ould in the opinion of a professional provider with knowledge of [the patient's] condition [result in] severe pain that could not be adequately managed without the care or treatment that is subject of the claim." (*Id*. ¶ 36.)

### 3. Submission and Denial of Claim for Benefits

According to the Complaint, on February 9, 2021, an Aetna employee represented to PNS that "the Plan paid 200% of Medicare." (*Id*. ¶ 37.) This representation is consistent with the Plan document that details ONET urgent care. (*Id*.) On February 10, 2021, Aetna faxed and PNS received an authorization for A.T.'s planned procedure. (*Id*. ¶ 38.) PNS promptly electronically submitted a Health Insurance Claim Form (the "Claim") to Aetna on February 16, 2021. (*Id*. ¶ 39.) The Claim was submitted with a total amount billed of $304,715.00. (*Id*. ¶ 40.)

On February 22, 2021, Aetna denied payment on the Claim entirely. (*Id*. ¶ 41.) The Explanation of Benefits ("EOB") provided a list of explanations to justify the denial. (*Id*. ¶ 42.)

On the same day, in response to the denial, PNS mailed Aetna additional documentation to illustrate that the procedure was an emergency. (*Id*. ¶ 43.) PNS identified that Aetna had electively split the modifier codes and insisted the codes were lacking the qualifying procedure. (*Id*.)

On March 1, 2021, PNS called Aetna, and an Aetna representative explained that the Claim was incorrectly processed as an elective procedure when it should have been processed as an

emergent procedure. (*Id.* ¶ 44.) The representative thereafter explained that the Claim was going to be reprocessed as an emergency claim. (*Id.*)

### 4. Practitioner and Member Appeals

On March 9, 2021, PNS completed and submitted a Practitioner and Provider Complaint and Appeal Request ("Practitioner Appeal"). (*Id.* ¶ 45.) The Practitioner Appeal explained that by improperly processing the Claim, it left the member with a balance of $60,943.00. (*Id.* ¶ 46.) Had Aetna processed the Claim properly, it would have reduced the billed amount with the proper modifiers. (*Id.*)

PNS submitted a request for ONET negotiation, of which Aetna confirmed receipt. (*Id.* ¶ 47.) On March 11, 2021, Aetna sent a letter to PNS indicating that their review of the Claim was paid accurately with no further reasoning or information. (*Id.* ¶ 48.) PNS thereafter contacted Aetna and an individual provided an additional Level I Appeal Form and explained that the March 11 letter was in response to PNS's request for ONET negotiation and was incorrectly processed and has since been reopened. (*Id.* ¶ 49.)

On April 1, 2021, PNS received a letter from Aetna stating that the request for payment of the Claim had reached the final level of appeal and indicated that it will not issue payment on the Claim. (*Id.* ¶ 50.)

On May 3, 2021, PNS received another letter from Aetna explaining that it had already engaged in a full and final investigation and reaffirmed that its previous decisions were final. (*Id.* ¶ 52.)

On July 8, 2021, Aetna responded to the member appeal indicating that certain codes within the Claim were ineligible for payment, and that certain codes were disallowed. (*Id.* ¶ 53.) After receiving Aetna's denial of the member appeal, A.T. called Aetna several times without receiving

a meaningful response. (*Id.* ¶ 54.) On August 24, 2021, A.T. wrote Aetna requesting a review of the Claim again, and faxed a formal request for ONET review. (*Id.* ¶ 55.)

On November 16, 2021, PNS requested that Aetna submit the disputed Claim to review by an Independent Medical Reviewer. (*Id.* ¶ 56.) On November 18, 2021, Aetna responded to PNS's review request and indicated that the Claim was ineligible for the Federal Department of Labor External Review process because it is "claims processing dispute" as opposed to a denial "based on medical necessity." (*Id.* ¶ 57.)

        5.      <u>Arbitration</u>

On July 9, 2021, PNS submitted a request for an arbitration to the New Jersey Division of Banking and Insurance ("DOBI"). (*Id.* ¶ 58.) On July 19, 2021, Maximus Federal ("Maximus"), a third party contracted with DOBI to administer arbitration applications, acknowledged receipt of PNS's application and expressed that the Claim was eligible for review. (*Id.* ¶ 59.) On October 4, 2021, Maximus determined that $42,107.20 was a reasonable amount of reimbursement based on the service provided surrounding the Claim. (*Id.* ¶ 60.) This determination was a non-binding recommendation. (*Id.* ¶ 61.) After receiving the Maximus determination, PNS again submitted another Practitioner and Provider Complaint and Appeal request, updated with the arbitrator's findings. (*Id.* ¶ 62.) Aetna did not respond to this request. (*Id.*)

    **C.**    **<u>Procedural History</u>**

On May 4, 2022, Dr. Lipani filed a one-count Complaint against Aetna for a Claim for Plan Benefits under 29 U.S.C. § 1132(a)(1)(B). (*See id.* ¶¶ 67–69.) Aetna filed the instant Motion to Dismiss on July 22, 2022 seeking dismissal of the Complaint. (*See* ECF No. 11.)

8

## II. LEGAL STANDARD

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. at 679. In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus*, 641 F.3d at 563.

## III. JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the civil action arises under the laws of the United States.

## IV. DISCUSSION

Defendant first moves to dismiss on the basis that Plaintiff, as an out-of-network medical provider, does not have standing to assert a claim against Aetna. (Moving Br. at 8, 9, 15.) Aetna asserts that the Plan included an unambiguous anti-assignment cause. (*Id*. at 7.) In opposition,

9

Plaintiff argues that he has standing not under an assignment, but rather a power of attorney. (Opp'n Br. at 3.)

Generally, only a participant or beneficiary under a plan has standing to bring an ERISA claim. 29 U.S.C. § 1132(a)(1). Plaintiff, as a healthcare provider, is neither a participant nor a beneficiary. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). ERISA, however "is silent on the issue of standing." *Univ. Spine Ctr. v. Aetna, Inc.*, Civ. No. 17-13654, 2018 WL 1757027, at *2 (D.N.J. Apr. 12, 2018). In the Third Circuit, "a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider." *Id.* "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

"While assignment of benefits may confer standing, 'anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable.'" *O'Brien v. Aetna, Inc.*, Civ. No. 20-5479, 2021 WL 689113, at *2 (D.N.J. Feb. 23, 2021) (quoting *American Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)).

Here, the Plan contains an anti-assignment clause. The Plan states that "[y]ou cannot assign, pledge, encumber or otherwise alienate any legal or beneficial interest in the benefits under the plan and any attempt to do so will be void."[3] (*See* Petrozelli Cert. at Ex. A; ECF No. 11-3 at

---

[3] Generally, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6). *Wierzbicki v. City of Jersey City*, Civ. No. 19-17721, 2020 WL 2214460, at *2 (D.N.J. May 7, 2020). The Third Circuit has held, however, that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Here, the Complaint expressly references and relies upon the Plan. (*See* Compl. ¶¶ 5, 7, 10, 32, 33–36.) The Court therefore will consider the Plan document in deciding the Motion.

295). The Court finds that the plain language of the Plan prohibits participants from giving healthcare providers the right to receive any payments for medical services. *See Enlightened Solutions, LLC v. United Behavioral Health*, Civ. No. 18-6672, 2018 WL 6381883, at *3, 5 (D.N.J. Dec. 4, 2018) (concluding that statement that "[a] Claimant may not assign his/her Claim under the Plan to a Nonparticipating Provider without the Plan's express written consent" was an unambiguous anti-assignment clause). Plaintiff does not challenge this clause or make any argument that it is ambiguous. Therefore, Plaintiff cannot use an assignment of rights to establish standing. *See O'Brien*, 2021 WL 689113, at *3.

Rather, Plaintiff contends that he has standing via a power of attorney. (Opp'n Br. at 3.) Plaintiff attaches an executed Power of Attorney to the Complaint ( "Power of Attorney", Compl. at Ex. A, PageID 18–19.), which authorizes Dr. Lipani

> to conduct insurance transactions and to demand, sue for, collect, recover and receive all goods, claims, debts, monies, and demands whatsoever now or shall hereafter become due, owning or belonging to me (including the right to institute any action, suit or legal proceedings, for the recovery of any claims or any part, or parts, thereof, to the possession whereof I may be entitled), to have and take all means for the recovery thereof, by action at law, suits in equity, or otherwise, and to compromise and agree for the same, and to make, execute and deliver receipts, releases, acquittances or other sufficient discharges therefore, and to sue and to settle suits of any kind in my name or on my behalf. This Power of Attorney extends to the power to conduct litigation and other legal proceedings, including the acceptance of service of process on my behalf, related to any insurance transactions. This Power of Attorney includes the power to conduct health care billing, recordkeeping and payment, which authorizes the [Dr. Lipani] to act as my representative pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), sections 1171 through 1179 of the Social Security Act, 42 U.S.C. Section 1320d, and applicable regulations, in order to take action including but not limited to obtaining access to my health care information.

(Power of Attorney at PageID 18.)

In response, Aetna claims that Plaintiff cannot circumvent the anti-assignment clause by claiming he is A.T.'s attorney-in-fact. The Court agrees. There is a "general prohibition on a litigant's raising another person's legal rights." *Lexmark Int'l Inc. v. Static Control Components. Inc.*, 572 U.S. 118, 126 (2014) (citation omitted). "Granting power of attorney is not an assignment and "does not enable the grantee to bring suit in his own name." *New Jersey Spine & Orthopedics, LLC v. Bae Sys., Inc.*, Civ. No. 18-10735, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020) (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 12–18 (2d. Cir. 1997)). In other words, "[g]ranting a power of attorney does not transfer an ownership interest in the claim." *Id*. (internal citation and quotation omitted).

Here, the Complaint identifies Dr. Lipani as the Plaintiff—not A.T., the patient and beneficiary of the Plan. (*See* Compl.) An attorney-in-fact, however, cannot litigate on their own behalf and for their own benefit. *Tamburrino v. UnitedHealth Grp. Inc.*, Civ. No. 21-12766, 2022 WL 1213467, at *3 (D.N.J. Apr. 25, 2022). The Complaint seeks to enforce Plaintiff's rights, rather than the rights of A.T., and there is no allegation that A.T. has suffered any harm. Therefore, because the plan prohibits an assignment of benefits and Plaintiff improperly asserts his claims pursuant to the Power of Attorney, the Court finds that Plaintiff lacks standing upon which to brings his ERISA claims. *See id.; see also Hutchins by Tanish v. Teamsters Western Region and Local 177 Healthcare Plan*, Civ. No. 22-4583, 2023 WL 2859803, at *4 (D.N.J. Apr. 10, 2023).[4]

---

[4] Given that the Court concludes that Plaintiff lacks standing, it does not reach Defendant's alternative argument that the Complaint fails to state a claim under Rule 12(b)(6).

V.     **CONCLUSION**

For the reasons stated above, the Court will GRANT the Motion and DISMISS the Complaint WITHOUT PREJUDICE. The Court will also permit Plaintiff another opportunity to plead his claims by granting leave to file an Amended Complaint within 30 days.

Date: **April 26, 2023**

                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**