**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN D. LIPANI, M.D.**, *as authorized representative, and attorney-in-fact of his patient A.T.*, <br><br> Plaintiff, <br><br> v. <br><br> **AETNA LIFE INSURANCE COMPANY**, <br><br> Defendant. | Civil Action No. 22-2634 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff John D. Lipani's ("Dr. Lipani" or

"Plaintiff") Motion for Reconsideration pursuant to Local Civil Rule 7.1(i).[1] ("Motion," ECF No.

40.) Plaintiff, on behalf of his patient A.T., seeks reconsideration of the Court's May 30, 2024

Opinion and Order which granted Defendant Aetna Life Insurance Company's ("Aetna" or

"Defendant") Second Motion to Dismiss without prejudice (ECF No. 35) because Plaintiff lacked

standing under the Employee Retirement Income Security Act ("ERISA") to bring a claim on

behalf of A.T. (ECF Nos. 38, 39.) Plaintiff submitted a Brief in Support of his Motion (ECF No.

40-1), to which Defendant submitted an Opposition. (ECF No. 41.)[2] The Court has carefully

---

[1] Local Civil Rule 7.1(i) governs motions for reconsideration and provides that "[u]nless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked shall be filed with the Notice of Motion."
[2] Plaintiff submitted a Reply Brief to Defendant's Opposition. (*See* ECF No. 42.) However, in light of Local Civil Rule 7.1(d)(3), Plaintiff later withdrew its Reply. (ECF Nos. 43–44.) The Court therefore does not consider Plaintiff's Reply Brief.

considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will **DENY** Plaintiff's Motion.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The factual background of the underlying dispute is known to the parties and set out in detail in the Court's previous two Opinions dated April 26, 2023, *see Lipani v. Aetna Life Ins. Co.*, Civ. No. 22-2634, 2023 WL 3092197, at *1 (D.N.J. Apr. 26, 2023) ("April 26, 2023 Opinion," ECF No. 21), and May 30, 2024, *see Lipani v. Aetna Life Ins. Co.*, 2024 U.S. Dist. LEXIS 96633, at *10 (D.N.J. May 30, 2024) ("May 30, 2024 Opinion," ECF No. 38).  In the interest of judicial economy, the factual background will not be restated in this Opinion.

Plaintiff commenced this action by filing a Complaint on May 4, 2022.  (ECF No. 1.)  On July 22, 2022, Defendant filed a Motion to Dismiss the Complaint (ECF No. 11), predicated on the fact that  "Plaintiff, as an out-of-network medical provider, [did] not have standing to assert a claim against Aetna," given that Aetna's insurance plan with A.T. included an unambiguous anti-assignment cause." (*Lipani v. Aetna Life Ins. Co.*, 2023 WL 3092197, at *5.)  The Court granted the Motion and held that (1) the insurance plan contained a valid anti-assignment clause, (*id.* at *6), and (2) "because the plan prohibits an assignment of benefits and Plaintiff improperly asserts his claims pursuant to the Power of Attorney, [Plaintiff] . . . lack[ed] standing upon which to bring his ERISA claims."  (*Id.* at *7.)  The Court subsequently dismissed the Complaint without prejudice and allowed Plaintiff thirty days to amend his Complaint.  (*Id.*)

On May 25, 2023, Plaintiff submitted a First Amended Complaint.  ("Am. Compl.," ECF No. 23.)  Thereafter, on October 23, 2023, Defendant filed a Motion to Dismiss the Amended Complaint.  (ECF No. 35.)  The Court, relying in part on its April 26, 2023 Opinion, again granted

the Motion.  (*Lipani v. Aetna Life Ins. Co.*, 2024 U.S. Dist. LEXIS 96633, at \*10.)  The Court held

that Aetna's plan with A.T. contained a valid anti-assignment clause, and that Plaintiff could not

assert standing via his Power of Attorney because the "Amended Complaint itself is bereft of any

allegations that come close to the examples provided in [*American Orthopedic & Sports Medicine*

*v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018)]."  (*Id.*)  Plaintiff was

again given leave to amend its complaint within thirty days.  (*Id.*)  Instead of amending his

Complaint, Plaintiff filed the instant Motion for Reconsideration.[3]  (ECF No. 40.)

## II.    LEGAL STANDARD

Reconsideration, under Local Civil Rule 7.1(i), is an "extraordinary remedy" that is rarely

granted.  *Interfaith Only. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002)

(citations omitted).  The purpose of a motion for reconsideration "is to correct manifest errors of

law or fact or to present newly [discovered] evidence."  *Max's Seafood Café ex rel. Lou-Ann, Inc.*

*v. Quinteros*, 176 F. 3d 669, 677 (3d Cir. 1999) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906,

909 (3d Cir. 1958)).  Accordingly, a motion for reconsideration must rely on one of the following

three grounds: "(1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available when the court granted the motion; or (3) the need to correct a

clear error of law or fact or to prevent manifest injustice."  *Id.* (citing *North River Ins. Co. v.*

*CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  To demonstrate a clear error, a

party must do more than allege that portions of a ruling were erroneous in order to obtain

reconsideration of that ruling; it must demonstrate that the holdings on which it bases its request

(1) were without support in the record, or (2) would result in manifest injustice if not addressed.

*Leja v. Schmidt Mfg, Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010).  Importantly, courts will

---

[3] Plaintiff's Motion is timely because it was filed "within 14 days after the entry of the order or judgment on the original motion by the Judge."  Local Civil Rule 7.1(i).

"entertain" motions for reconsideration "[o]nly where the court has overlooked matters that, if considered by the court, might reasonably have resulted in a different conclusion." *U.S. v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Mere "disagreement with the Court's decision" is also insufficient. *P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001).

## III.   DISCUSSION

### A.   Reconsideration

In the Motion, Plaintiff argues that the May 30, 2024 Opinion "fundamentally misapplied controlling precedent" in that the Court conflated Article III standing with ERISA standing. (Moving Br. at 3–4.) Plaintiff contends that the Court's focus should have been on whether Dr. Lipani's patient, A.T., can satisfy the elements of Article III standing, not whether Dr. Lipani could be a proper plaintiff under ERISA. (*Id.* at 5.) In other words, according to Plaintiff, "[t]he issue of whether Dr. Lipani can, under 29 U.S.C. § 1132, bring the claim on A.T.'s behalf in a representative capacity . . . is a separate issue." (*Id.* at 6.) Plaintiff further argues that the Court incorrectly construed a validly executed power of attorney as an assignment of benefits, and misapplied the Third Circuit's *American Orthopedic* decision given that *American Orthopedic* sets forth a "non-exhaustive list of examples," that the Court incorrectly analyzed. (*Id.* at 7.)[4] Lastly, Plaintiff argues that "the Third Circuit unambiguously holds that a plan participant's execution of a power of attorney does not implicate an anti-assignment clause in an ERISA-governed health plan," and thus, Plaintiff has standing to bring suit on behalf of A.T. (*Id.* at 9.)

---

[4] In this regard, Plaintiff relies on language in *American Orthopedic* that "[a] power of attorney, on the other hand, does not transfer an ownership interest in the claim, but simply confers on the agent the authority to act on behalf of the principal." (*Id.* at 8 (quoting *Am. Orthopedic & Sports Med.*, 890 F.3d at 454–55 (quotation marks and citations omitted))).

In response, Defendant argues that Plaintiff's Motion "regurgitates his opposition to [Aetna's] motion to dismiss" the Amended Complaint.  (Opp'n Br. at 6.)  Defendant adds that Plaintiff had argued that the Court interpret *American Orthopedic* a certain way before, which the Court previously rejected.  (*Id.* at 7.)  In Defendant's view, Plaintiff's Motion fails to cite controlling decisions of law that the Court has overlooked.  (*Id.* at 8.)  Moreover, Defendant contends that the Court correctly analyzed standing in the ERISA context because the "facts of this case do not trigger the exception to the rule against third-party standing."  (*Id.* at 12.)  Defendant adds that Dr. Lipani cannot assert third-party standing because the Amended Complaint does not include allegations showing that there was an obstacle preventing A.T. from bringing the case herself.  (*Id.* at 4 (citing *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 288-89 (3d Cir. 2002))).  Defendant further contends that the Amended Complaint provides no explanation as to why A.T. cannot bring this action herself and that the May 30, 2024 Opinion is "in lock-step with Supreme Court and Third Circuit precedent."  (*Id.* at 14.)  Lastly, Defendant argues that the Revised Durable Power of Attorney Act stands in contrast to Plaintiff's position that he has standing to sue on behalf of A.T.  (*Id.* at 14–15.)

It is apparent from the Motion that Plaintiff merely disagrees with the Court's May 30, 2024 Opinion, and seeks another bite of the apple on the merits.  *See P. Schoenfeld Asset Mgmt., LLC*, 161 F. Supp. 2d at 352 ("Reconsideration motions . . . may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment.  [Furthermore,] [a] party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" (quoting *Carteret Savings Bank, F.A. v. Shushan*, 721 F. Supp. 705, 709 (D.N.J.1989))).

Plaintiff argues that the Court misconstrued the Third Circuit's decision in *American Orthopedic*. In *American Orthopedic*, the Third Circuit considered whether anti-assignment clauses in insurance policies—which bar insureds from assigning their claims to any third party— are enforceable or whether they are "antithetical" to ERISA. *Am. Orthopedic & Sports Med.*, 890 F.3d at 447–48. It held that anti-assignment clauses in ERISA-governed health insurance plans are enforceable, based on the text of ERISA, congressional policy, and the common law doctrine that terms of an unambiguous contract should be enforced. *Id.* at 448–54. The Third Circuit also touched on the intersection between an anti-assignment clause and its effect on an insured's ability to grant a power of attorney. *Id.* at 454. It explained that

> [a]ssignments and powers of attorney differ in important respects . . . . An assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf. Thus, a plan trustee can limit the ability of a beneficiary to assign claims because, among the parties' power to limit the rights created by their agreement, is the power to restrict ownership interest to particular holders. A power of attorney, on the other hand, does not transfer an ownership interest in the claim, but simply confers on the agent the authority to act on behalf of the principal.

*Id.* at 454–55. The Third Circuit concluded that an insured could grant a valid power of attorney despite the existence of an anti-assignment clause "because [the insured] retains ownership of his claim . . . [and] as principal, may confer on his agent the authority to assert that claim on his behalf." *Id.* at 455.

Because they appear helpful to his cause, Plaintiff seizes on two sentences in *American Orthopedic*:

6

> As these principles apply here, our holding today that the anti-assignment clause is enforceable means that Joshua, as plan beneficiary, did not transfer the interest in his claim, but it does not mean that Joshua cannot grant a valid power of attorney. To the contrary, because he retains ownership of his claim, Joshua, as principal, may confer on his agent the authority to assert that claim on his behalf, and the anti-assignment clause no more has power to strip Appellant of its ability to act as Joshua's agent than it does to strip Joshua of his own interest in his claim.

(Moving Br. at 8 (quoting 890 F.3d at 455.))  In short, this language says that an anti-assignment clause does not preclude the grant of a power of attorney.  It does not say, however, as Plaintiff hopes, that an insured can broadly authorize a power of attorney to bring suit on an insured's behalf.

In fact, *American Orthopedic* signals that standing is likely to be an obstacle because it quotes the Second Circuit's decision in *W.R. Huff* in the citations that immediately follow: "a mere power-of-attorney . . . does not confer standing to sue in the holder's own right, whereas an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an injury-in-fact."  890 F.3d at 455 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)) (interior quotation marks omitted).[5]   After acknowledging this general rule, *W.R. Huff* considered what it called "well-recognized exceptions to the injury-in-fact requirement" that permit third-party standing (like the kind sought by Plaintiff here) "where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  549 F.3d at 109.

---

[5] In addition to then-recently issued Supreme Court precedent, *W.R. Huff* relied upon a prior Second Circuit decision that stated the rule more succinctly: "The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetic, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997)

After its citation to *W.R. Huff*, the Third Circuit in *American Orthopedic* provided examples of when insureds might rely on their agents to pursue their claims: short-term incapacitation or longer-term unavailability due to deployment or progressive conditions. 890 F.3d at 455. Plaintiff is correct that these are not limiting examples. They are merely sample illustrations from the healthcare context of exceptions to the injury-in-fact requirement that would be appropriate under *W.R. Huff*.

Other courts in this district have reached the same unremarkable conclusion that "a power of attorney does not endow the attorney-in-fact with injury-in-fact." *Aguilar v. Vitamin Shoppe, Inc.*, Civ. No. 17-6454, 2018 WL 1960444, at *6 (D.N.J. Apr. 25, 2018); *N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, Civ. No. 19-10735, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020) (explaining that a power of attorney "does not enable the grantee to bring suit in his own name" and "does not transfer an ownership interest in the claim"); *Tamburrino v. UnitedHealth Grp. Inc.*, Civ. No. 21-12766, 2022 WL 1213467, at *5 (D.N.J. Apr. 25, 2022) (holding that although a doctor had a valid power of attorney for its patient, the doctor did not have ERISA standing).

As to whether A.T.'s circumstances warrant permitting Plaintiff to pursue her claims on her behalf, the Amended Complaint lacks the necessary allegations to articulate (1) Plaintiff's "close relationship" to A.T. and (2) a barrier to A.T.'s ability to assert her own interest. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *W.R. Huff*, 549 F.3d at 109. Absent this information, Dr. Lipani cannot proceed with his claims even as attorney-in-fact.

In short, the Court finds that it did not commit a manifest error of law. It will therefore **DENY** Plaintiff's Motion.

## B.      Amendment to the Order

As a final matter, Plaintiff argues that if the Court denies the Motion, the Court should, "in the interests of judicial economy . . . make the [May 30, 2024] dismissal Order with prejudice to allow an important issue impacting patients and their statutory rights, to be addressed by the Third Circuit." (Moving Br. 2–3.)  Defendant does not object to Plaintiff's request.  (Opp'n Br. 1 n.1.) The Court understands the parties' concerns, but at this time, the Court will not amend its May 30, 2024 Order because an amendment is neither appropriate nor needed.

An amendment is not appropriate because the Court concluded that Plaintiff lacked standing; therefore, the Court lacks the jurisdiction required to dismiss Plaintiff's claims with prejudice because it would constitute an impermissible determination on the merits of Plaintiff's claims.  *See Patel v. Allstate New Jersey Ins. Co.*, 648 F. App'x 258, 262–63 (3d Cir. 2016) (vacating district court underlying dismissal because "once the District Court determined that [the plaintiff] did not have standing, [the court] necessarily determined that it did not have jurisdiction and thus could not decide the merits of the case.")

An amendment to the Order is not needed either.  Generally, it is true that a dismissal without prejudice does not represent a final judgment on the merits that is appealable.  *Bethel v. McAllister Brothers, Inc.*, 81 F.3d 376, 381 (3d Cir. 1996).  Even a cursory review of the relevant authority reveals, however, that  "[w]here . . . the plaintiff cannot cure the defect in the complaint or elects to stand on the complaint without amendment, the order becomes final and appealable." *Id.*; *see also Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 477 (3d Cir. 2006) (noting that "an order dismissing a complaint without prejudice is not a final and appealable order, unless the plaintiff no longer can amend the complaint because, for example, the statute of limitations has run, or the plaintiff has elected to stand on the complaint").

9

The Third Circuit has stated that the reason for the exception to the general rule is that "because a case dismissed without prejudice that cannot be reinstituted is in the same position as a case dismissed with prejudice . . . both classes of cases have reached finality," and should be appealable.  *Id.*; *see also Weber v. McGrogan*, 939 F.3d 232, 238 (3d Cir. 2019) (explaining that "when a plaintiff prefers not to amend, he 'may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate' . . .  That statement is not remarkable; a plaintiff is always free to decline an invitation to amend a seemingly defective complaint and, instead, seek a final appealable order." (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976))).  In short, Plaintiff has valid procedural mechanisms available to him to seek review of the Court's decision that dismissed his claims.  *See, e.g.*, *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002); *Caver v. City of Trenton*, 420 F.3d 243, 261 (3d Cir. 2005).  Accordingly, the Court will not amend the May 30, 2024 Order.[6]

## IV.    CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiff's Motion for Reconsideration. An appropriate Order will follow.


Date: January 6, 2025


                                            s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[6] Should Plaintiff instead seek to again amend the complaint, the Court encourages him to consider joining A.T. as the real party in interest under Fed. R. Civ. P. 17.